

1 | GONZALEZ & LEIGH, LLP
MATT GONZALEZ (SBN 153486)
2 | G. WHITNEY LEIGH (SBN 153455)
BRYAN W. VERESCHAGIN (SBN 188608)
3 | Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
4 | Telephone: (415) 512-2000
Facsimile: (415) 512-2001
5 |
Attorneys for Plaintiff
6 | NATASHA BURTON

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

NATASHA BURTON, an individual          **C08 01215 HRL**

12

Plaintiff,          **COMPLAINT**

13

vs.

14                                              1. **Violation of 42 U.S.C. §1983 –**
CITY OF SAN JOSE; ROBERT DAVIS in his       **Excessive Force**
15 | capacity as CHIEF OF POLICE OF THE CITY   2. **Violation of 42 U.S.C. §1983 –**
OF SAN JOSE; OFFICER SHAWN ROCHA;           **Racial Discrimination**
16 | OFFICER ERIC KURZ; OFFICER CHRIS         3. **42 U.S.C. §1983 Monell Liability**
HARDIN; OFFICER CHRIS CRUZADO; and
17 | DOES 1 THROUGH 75, individually and in
their official capacities as employees of the
18 | CITY OF SAN JOSE and the SAN JOSE
POLICE DEPARTMENT; and DOES 76-100
19 | individually, inclusive,

20                                  Defendants.

21

22

Plaintiff hereby alleges as follows:

23

I.       **JURISDICTION AND VENUE**

24

1.      This is a civil suit brought under the Federal Civil Rights Act, 42 U.S.C.§1983 for

25

violations of plaintiff's rights as secured under the United States Constitution. This Court has

26

subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1343(3) and 28

27

U.S.C. § 1331.

28

1    2.    This suit further seeks the imposition of punitive damages against all appropriate

2  defendants as permitted under law.

3    3.    Venue is proper in this Court because the facts supporting each of these causes of

4  action arise out of conduct undertaken by defendants in San Jose, California.

5    4.    Intra-district assignment is appropriate in the San Jose Division of the Northern

6  District because all of the events occurred within the City of San Jose in Santa Clara County,

7  California.

8                    **II.    PARTIES**

9    5.    Plaintiff Natasha Burton resides in San Jose, California. Ms. Burton is a twenty-

10  one year old African-American student at San Jose State University, majoring in Sociology with

11  an emphasis in Criminology, in preparation for a career in law enforcement. To this end, Ms.

12  Burton has been working directly with the San Diego Police Department as a member of their

13  Youth Advisory Committee, a group charged with improving the relationship between the

14  surrounding community and the Police Department. In that capacity she performed community

15  outreach and organized meetings between community members and the Police Department,

16  including its chief. Ms. Burton also comes from a family involved in law enforcement. Her

17  mother is a former officer in the San Diego Police Department, and now works for the State of

18  California as a parole agent. Additionally, Ms. Burton is also attending San Jose State on a

19  scholarship from the San Diego Police Officer's Association. She is scheduled to graduate from

20  San Jose State in the Spring of 2009. Ms. Burton is a motivated career-minded student and

21  exemplary employee with no criminal record.

22    6.    Defendant the City of San Jose is a municipality duly organized and existing

23  under the laws of the State of California. The City of San Jose is located in the County of Santa

24  Clara, California. The City of San Jose operates under its authority the San Jose Police

25  Department.

26    7.    Defendant Robert Davis is the Chief of Police for the City of San Jose. During

27  the times material to this complaint, Chief Davis was a policy-making official for the City of San

28

2
**COMPLAINT**

1   Jose's Police Department. Chief Davis is being sued in his official capacity as the Chief of

2   Police for the City of San Jose.

3       8.      Defendant Shawn Rocha is an Officer with the San Jose Police Department and

4   was a member of Rapid Deployment Team #8, under the command of Sergeant Andrew

5   LoCicero, on the night of the "Mardi Gras" celebration in downtown San Jose, February 28,

6   2006 and into March 1, 2006.

7       9.      Defendant Chris Hardin is an Officer with the San Jose Police Department and

8   was a member of Rapid Deployment Team #8, under the command of Sergeant Andrew

9   LoCicero, on the night of the "Mardi Gras" celebration in downtown San Jose, February 28,

10  2006 and into March 1, 2006.

11      10.     Defendant Eric Kurz is an Officer with the San Jose Police Department and was a

12  member of Rapid Deployment Team #8, under the command of Sergeant Andrew LoCicero, on

13  the night of the "Mardi Gras" celebration in downtown San Jose, February 28, 2006 and into

14  March 1, 2006.

15      11.     Defendant Chris Cruzado is an Officer with the San Jose Police Department and

16  was a member of Rapid Deployment Team #8, under the command of Sergeant Andrew

17  LoCicero, on the night of the "Mardi Gras" celebration in downtown San Jose, February 28,

18  2006 and into March 1, 2006.

19              **III.    STATEMENT OF FACTS**

20      12.     On the night of the "Mardi Gras" celebration in downtown San Jose on February

21  28, 2006, Sergeant Andrew LoCicero was in command of a team of officers – Rapid Deployment

22  Team #8 ("RDT 8) – assigned to the area of San Jose City Hall.

23      13.     RDT 8 was a team of "swing shift" officers under Sergeant LoCicero that

24  consisted of Officers Rocha, Kurz, Cruzado, Hardin, Fregger, and Serrano, among possible

25  others.

26      14.     Around Midnight on the night in question, RDT 8 was in a formation know as a

27  "skirmish line" that stretched, generally, along East Santa Clara Street in front of City Hall.

28

**COMPLAINT**

15.    Around the same time, Natasha Burton and a group of 4-5 friends were walking along East Santa Clara Street, near the corner of Fifth Street, attempting to make their way back to their residences on the campus of San Jose State University.

16.    Previous to arriving at the area near the corner of 5th Street and E. Santa Clara, the females had stopped at a burrito shop on Santa Clara Street between Second and Third Streets. After leaving the burrito shop, the females, including Ms. Burton, proceeded to walk East on Santa Clara Street in order to return to their residences on campus.

17.    Ms. Burton had not consumed any alcohol, or taken any illegal drugs that night, and was completely sober.

18.    The group, however, was prevented from walking eastbound on Santa Clara by officers who were directing people North towards Saint John. The group followed the directives of the officers and proceeded to walk North on either Third or Fourth Street towards St. John.

19.    Reaching Fifth and St. John, and by this time having generally removed themselves from the crowd, the females, including Ms. Burton, attempted, once again, to return back to their residences on campus.

20.    Upon arriving at Fifth and Santa Clara Street, one of the group, Kimberly Larry, was harassed by an unknown officer an horseback, who intentionally and repeatedly used the horse's muzzle to push Ms. Larry's person - this despite the fact that Ms. Larry was, all the time, following police orders to walk down 5th Street towards City Hall

21.    Upset by the harassment she received at the hands of an unknown San Jose police officer, Ms. Larry walked ahead of the group, heading South towards some of the members of RDT 8 standing along East Santa Clara street, to complain about the treatment she received from the officer on horseback and to ask for the name and badge number of the same officer. The police officers told her simply to "keep walking."

22.    Following the orders of the officer, Ms. Larry proceeded to take a path through City Hall property towards San Fernando Street which led directly back to the campus of San Jose State. At no time did any officer attempt to stop Ms. Larry from walking in that direction.

1    23.    The harassment of Ms. Larry by the officer on horseback and her subsequent

2  attempt to obtain the name and badge number of that officer was the first time that any of the

3  females had personally interacted or spoken with any San Jose Police officers that night.

4    24.    While Ms. Larry was talking to the officers, the rest of the group, including Ms.

5  Burton, Christina Sanchez, and Sherretta Henderson, remained behind Ms. Larry, close to the

6  sidewalk.  However, at some point shortly after Ms. Larry walked ahead of the group to return

7  home, the females were told by an unknown officer to "go get your friend [Ms. Larry], she can't

8  walk that way."

9    25.    At that point, following the directive of the officer, Ms. Burton told the officer

10  that she would attempt to retrieve her friend and direct her to walk around City Hall, instead of

11  cutting through City Hall property which led back to campus.

12    26.    Ms. Burton, however, never made it to her friend.  Instead, before reaching Ms.

13  Larry, Ms. Burton was told by Officer Rocha that she could not go that "fucking way."

14    27.    As Ms. Burton turned around in order to comply with the officer's orders, Officer

15  Rocha began to use obscenities and told Ms. Burton to move "fucking faster."

16    28.    As Ms. Burton was attempting to follow the directives of Officer Rocha, she

17  asked him simply: "treat me like a human."

18    29.    As Officer Rocha continued to yell obscenities and demand that Ms. Burton walk

19  "fucking faster," Ms Burton twice asked Officer Rocha for his badge number.

20    30.    In violation of clearly delineated police policy and procedure, Officer Rocha

21  refused to provide his name or badge number to Ms. Burton.

22    31.    As Ms. Burton was attempting to vacate the area, Officer Rocha shoved Ms.

23  Burton violently with his baton.  Ms. Burton reacted by placing her hands up in a defensive

24  position to blunt any further strikes.

25    32.    At this point, Ms. Burton heard another officer falsely say that she had committed

26  a felony by assaulting Officer Rocha and that she could be "locked up for a long time."

27    33.    Ms. Burton was then violently assaulted by two officers, Officers Rocha and

28

**COMPLAINT**

1  Kurz, tackled to the ground, and arrested. In the process, Officer Kurz landed directly on Ms.

2  Burton's right shoulder, causing her pain and injury.

3        34.    As she was tackled, the right side of Ms. Burton's face was slammed to the

4  ground, and her knees hit the ground with great force. As a result she suffered a large abrasion

5  and bruise on the side of her face. As well as scrapes and bruises to her knees.

6        35.    While she was on the ground, Ms. Burton heard one officer say, "If I was a black

7  officer, you wouldn't be acting like this."

8        36.    Additionally, while Ms. Burton was on the ground she was hit on the leg twice by

9  Officer Hardin with what she believes was a baton.

10       37.    At the time she was tackled, Ms. Burton was following the explicit directive of an

11  officer on the scene to go retrieve her friend, Kimberly Larry. At no point did she disobey any

12  order or directive from any police officer on the scene.

13       38.    After violently tackling Ms. Burton to the ground, Officer Kurz proceeded to

14  aggressively force his lower leg and knee onto the back of Ms. Burton's neck and head causing

15  Ms. Burton pain and discomfort.

16       39.    Officer Kurz then proceeded to grab Ms. Burton's right arm and place it in a

17  "twist lock" in order to handcuff her. The handcuffs were placed extremely tight around Ms.

18  Burton's wrists, causing her to cry out in pain, and causing her wrists to swell and turn red.

19       40.    At no time during the violent takedown, subsequent knee to the back of the head

20  and neck, "twist lock," and handcuffing, did Ms. Burton ever resist in any way.

21       41.    The officers' aggressive attitude changed when she explained to them that her

22  mother was a police officer in San Diego, and that she was attending San Jose State on a partial

23  San Diego Police Department scholarship. At that point, the officers began to talk to her with

24  respect and stated that they "didn't think she was a bad person."

25       42.    After Ms. Burton again complained that her handcuffs were too tight, Officer

26  Rocha agreed that the cuffs were too tight and directed officer Cruzado to cut them off.

27       43.    Before transporting Ms. Burton to the main jail to be booked, Officer Rocha

28

6

COMPLAINT

1 | ordered another officer on the scene to take pictures of Ms. Burton's visible injuries, including

2 | the abrasion and swelling to the right side of her face, and the bruises and scrapes to the knees.

3 | Ms. Burton was then transported to the main jail by Officer Cervantes.

4 |         44.    The next day, Ms. Burton filed a formal citizen complaint with the San Jose

5 | Police Department, and gave a written and oral statement to the Department about her treatment

6 | the night before at the hands of the San Jose Police Department. Ms. Burton was told that an

7 | internal investigation would ensue, and that she would be contacted with any results and

8 | findings. However, now two years later, Ms. Burton has never been contacted by the

9 | Department and never received the results of any internal investigation.

10 |        45.    On March 3, 2006, 3 days after the incident, Ms. Burton admitted herself to the

11 | urgent care unit at Santa Teresa Kaiser Hospital to be treated for the injuries caused by

12 | defendants on the night of Mardi Gras. Ms. Burton still suffered from headaches as a result of

13 | her head being slammed into the concrete. Additionally, she complained of pain to the right side

14 | of her face where her face was pressed into the contact with the concrete, and pain in her right

15 | shoulder (Defendant Kurz's tackle), right knee (contact with concrete as she was tackled), and

16 | left wrist.

17 |        46.    Ms. Burton continued to suffer painful headaches for at least one week after the

18 | incident.

19 |        47.    As a result of the constant headaches and subsequent stress and anxiety caused by

20 | the assault, Ms. Burton was forced to take approximately 10 days off of work and school.

21 |        48.    Even after returning to work, she was forced to move from full time to part time

22 | work as a result of dealing with the stress and anxiety caused by the assault.

23 |        49.    When she returned to classes, Ms. Burton continued to suffer anxiety attacks,

24 | stress, and nervousness, and was prevented from concentrating on her classwork. As a result, her

25 | grades suffered, and her parents flew in to San Jose to help her cope with the stress.

26 |        50.    The nervousness, stress, and anxiety attacks continued for months after the

27 | incident, and have never fully subsided. Ms. Burton still suffers from stress and anxiety when

28

7

**COMPLAINT**

1  she is reminded of the incident, and is forced to relive it.

2      51.    Her treatment at the hands of the San Jose Police Department has marred her once

3  wholly positive view of the San Jose Police Department, and caused her to live in fear of

4  encountering any of the officers who assaulted her. As a result she is rethinking her previous

5  desire for a career in law enforcement.

6                          **FIRST CAUSE OF ACTION**

7      **(42 U.S.C. § 1983 –Unlawful Seizure, Excessive Force, Denial of Medical Care)**

8              **(Against Defendants Rocha, Kurz, Hardin, and Cruzado)**

9      52.    Plaintiff incorporates the allegations set forth in paragraphs 1-51 as though fully

10  set forth herein.

11      53.    Defendants, without cause, violently tackled plaintiff to the ground, slammed

12  her face onto the concrete and thereafter battered her, causing other injuries to her through the

13  unlawful use of excessive force against plaintiff. Additionally, defendants knowingly used

14  excessive force and caused the plaintiff pain and injury when they placed flexcuffs on her that

15  were, by defendant's own admission, unnecessarily tight and constrictive. In the process,

16  defendants violated plaintiff's constitutional right to be free from unlawful detentions, seizures

17  and excessive force as secured by the Fourth and Fourteenth Amendments.

18      54.    Defendants acted under color of state law and within the course and scope of

19  their employment with the City of San Jose and the San Jose Police Department when

20  unlawfully deploying excessive force against plaintiff for no reason, and when improperly

21  denying plaintiff needed medical care. Defendants also seized plaintiff in the absence of

22  probable cause and in violation of her constitution rights.

23      55.    Defendants' actions directly and proximately caused injury to plaintiff.

24      56.    As a result of defendants' actions, plaintiff has suffered damages, in an amount

25  to be determined at trial.

26

27

28

57.    Defendants' actions were taken in knowing violation of plaintiff's legal and constitutional rights, and without good faith.  Punitive damages against the involved City of San Jose police officers are thus warranted.

Wherefore, plaintiff prays for relief against defendants as set forth hereafter.

## SECOND CAUSE OF ACTION

### (42 U.S.C. § 1983 – Racial Discrimination)

### (AGAINST Defendants Rocha, Kurz, Hardin, and Cruzado)

58.    Plaintiff incorporates the allegations contained in paragraphs 1 through 57 above as though fully set forth herein.

59.    Defendant officers intentionally battered plaintiff based on her race.

60.    Defendants acted under color of law when they violated plaintiff's constitutional right to be free from discrimination and excessive and arbitrary force on the basis of her race, ethnicity and color.  Defendants had no reasonable basis to batter plaintiff or to deny her appropriate medical care and treatment, and did on the basis of her race, color, and ethnicity.

61.    The actions described herein directly and proximately caused plaintiff physical injury, mental pain and suffering, and extreme humiliation. As a result of defendants' actions and/or omissions, plaintiff has suffered damages, in an amount to be determined at trial.

62.    Defendants' actions were taken in knowing violation of plaintiff's legal and constitutional rights, and without good faith.  Punitive damages against Defendants are thus warranted.

Wherefore, plaintiff prays for relief against defendants as set forth hereafter.

## THIRD CAUSE OF ACTION

### (Monell Liability 42 U.S.C. 1983 – Injunctive Relief)

### (AGAINST CITY OF SAN JOSE, ROBERT DAVIS)

63.    Plaintiff incorporates the allegations contained in the above paragraphs 1 through 62 as though set forth fully herein.

9

COMPLAINT

64.    Plaintiff is informed and believes, and thereon alleges, that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, knew and/or reasonably should have known, about repeated acts of misconduct by Defendants, including acts of excessive force, and racial bias.

65.    Plaintiff is further informed and believes that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, knew and/or reasonably should have known, that Defendants were improperly trained to perform their duties as police officers.

66.    Despite having such notice, plaintiff is informed and believes, and thereon alleges that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by the involved police officers.

67.    Plaintiff is informed and believes, and thereon alleges, that as a result of the deliberate indifference, recklessness and/or conscious disregard of the misconduct by, and the lack of training or unreasonable training, high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, defendants approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Defendants, which resulted in violations of plaintiff's constitutional rights.

68.    Defendants City of San Jose, Chief of Police Robert Davis and DOES 51-75 owed plaintiff a duty of care to ensure that it hired, trained, and supervised its officers so as to prevent violations of her constitutional, statutory, and common law rights.

69.    The aforementioned acts and/or omissions and/or deliberate indifference by the City of San Jose, high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, resulted in deprivation of plaintiff's constitutional rights.

**COMPLAINT**

## V.    RELIEF REQUESTED

Wherefore, plaintiff respectfully request that this Court grant the following relief:

1.    For compensatory damages according to proof against all defendants;

2.    For special damages according to proof against all defendants;

3.    Injunctive Relief to mandate supplemental officer training on the appropriate use of force and provision of medical care.

4.    Punitive damages against individual defendants in an amount to be proven at trial pursuant to 42 U.S.C. §1983;

5.    Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

6.    Costs incurred in this matter;

7.    Prejudgment interest at the maximum legal rate; and

8.    The cost of suit and any such other relief as the Court finds just and proper.

Dated:  February 28, 2008                        GONZALEZ & LEIGH, LLP


                                                                 By _____
                                                                      BRYAN VERESCHAGIN
                                                                      Attorneys for Plaintiff
                                                                      NATASHA BURTON


## DEMAND FOR JURY TRIAL

Plaintiff hereby demand trial by jury of their claims raised herein.

Dated:  February 28, 2008                        GONZALEZ & LEIGH, LLP


                                                                 By _____
                                                                      BRYAN VERESCHAGIN
                                                                      Attorneys for Plaintiff
                                                                      NATASHA BURTON

**COMPLAINT**